**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ARCELORMITTAL S.A.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ARCELORMITTAL MEXICO SA DE CV LLC,**<br><br>**Defendant.** | Civ. No. 2:26-cv-535 (WJM)<br><br>**OPINION** |

In this action for state and federal trademark infringement, Plaintiff Arcelormittal S.A. ("Plaintiff" or "ArcelorMittal") moves unopposed for entry of judgment by default against Defendant ArcelorMittal Mexico SA de CV ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 10. The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiff's motion for default judgment is **granted in part and denied in part.**

## I. BACKGROUND

Plaintiff, formed in 2007, is a multinational steel manufacturing and mining corporation with its principal place of business located in Luxembourg. *See* Compl., ¶¶ 2, 7, ECF No. 1. ArcelorMittal is the second largest steel producer in the world, with steelmaking operations in 15 countries including the United States, Brazil, Canada, and Mexico. *Id.* ¶ 7. ArcelorMittal subsidiaries use the "ArcelorMittal" name in their names, website and email addresses. *Id.* ¶ 8. The legitimate website is: https://mexico.arcelormittal.com. *Id.* ArcelorMittal owns the following United States Trademarks: U.S. Trademark Registration Nos. 3,643,643 and 3,908,649 for the mark "ArcelorMittal"; U.S. Trademark Registration Nos. 6,874,947 and 7,154,422 for the mark "ArcelorMittal SmarterSteels;" and U.S. Trademark Registration No. 7,477,056 for the mark "ArcelorMittal Multi Part Integration." *Id.* ¶ 9, Ex. 1 (collectively, the "ArcelorMittal Marks"). According to Plaintiff, the ArcelorMittal Marks have become, through widespread and favorable public acceptance and recognition, famous and an asset of substantial value as a symbol of ArcelorMittal, its products and services, and its goodwill. *Id.* ¶ 10.

Defendant is a limited liability company organized under the laws of the State of New Jersey on December 6, 2024. *Id.* ¶ 3. Defendant has one member, Luis Rosario, with a listed address in Jersey City, New Jersey, which is also listed as Defendant's main business address. *Id.* ¶ 3. Defendant was registered with the name "ArcelorMittal Mexico SA de CV LLC" purportedly as part of a deliberate scheme to impersonate ArcelorMittal's Mexican subsidiary (ArcelorMittal Mexico S.A. de C.V.) and defraud ArcelorMittal, its subsidiaries and their customers. *Id.* ¶¶ 11-12. Plaintiff was recently targeted in a similar scheme in which fraudsters registered a slight variation of its Brazilian subsidiary's name, opened a corporate bank account, and attempted to impersonate the subsidiary to fraudulently solicit payments from a customer. *Id.*¶ 12. From December 2024 to March 2025, another fraudulent entity was formed in New York under the name "ArcelorMittal Mexico SA de CV Inc." by an individual named Jose Garcia. *Id.* The formation of a fraudulent entity also occurred in Florida in 2023 under the name "ArcelorMittal Mexico SA de CV Corp." *Id.* In this action, Plaintiff concludes that the "striking similarity between Defendant's name and Plaintiff ArcelorMittal's Mexican subsidiary strongly indicates that Defendant intends to engage in comparable fraudulent conduct and/or illegal acts." *Id.* Plaintiff sent Defendant a cease and desist letter on November 10, 2025, but Defendant has yet to respond. *Id.* ¶¶ 13, 14, Exs. 3. 14.

On January 16, 2026, Plaintiff filed suit alleging trademark infringement in violation of 15 U.S.C. § 1114 (Count 1); false designation of origin, unfair competition and passing off in violation of 15 U.S.C. § 1125(a) (Count 2); dilution by blurring or dilution by tarnishment of the famous marks in violation of 15 U.S.C. § 1125(c) (Count 3); and unfair competition (passing off and misappropriation) in violation of N.J.S.A. § 56:4-1 (Count 4). As provided by 15 U.S.C. §§ 1116, 1117, and 1118, Plaintiff seeks statutory damages and a permanent injunction including prohibiting Defendant from using any of the ArcelorMittal Marks, recovery of profits resulting from Defendant's trademark infringement and cybersquatting, and transferal of all Defendant's domain names bearing the ArcelorMittal Marks.

Plaintiff served Defendant with a summons and complaint on February 4, 2026. ECF No. 5. Defendant has not answered or otherwise moved in response to Plaintiff's Complaint. A Clerk's entry of default was entered on March 9, 2026. ECF No. 7. On August 13, 2026, Plaintiff filed this motion for default judgment and served Defendant with a copy. Cert. of Service, ECF No. 10. No opposition has been filed.

## II. DISCUSSION

Fed. R. Civ. P. 55(b)(2) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). However, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not

entitle a plaintiff to judgment. Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court. *Hritz v. Woma Corp.,* 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir. 1951)). Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir.1990) (citing 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court first determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Gordashevsky*, 558 F.Supp.2d at 535. After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir. 2000); *Hritz,* 732 F.2d at 1181.

A. Whether Cause of Action is Stated

As discussed below, Plaintiff's factual allegations, taken as true, are sufficient to establish claims for trademark infringement and unfair competition under federal and state law.

*1. Trademark Infringement and Unfair Competition (Counts 1, 2)*

To prevail on trademark infringement,[1] false designation of origin, and unfair competition[2] claims, a plaintiff must establish that: (1) their marks are valid and legally protectable; (2) they own the marks; and (3) defendants' use of their marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. *See Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.,* 269 F.3d 270, 279–80 (3d Cir. 2001) (setting forth elements of trademark infringement and unfair

[1] 15 U.S.C. § 1114(1)(a) provides that any person who, without consent of the trademark holder, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" is liable for trademark infringement.

[2] 15 U.S.C. § 1125(a)(1)(A) makes liable "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

competition); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472–73 (3d Cir.1994) (observing that factors relevant to unfair competition and false designation claims under 15 U.S.C. § 1125 are "essentially the same" as those relevant to trademark infringement claim under 15 U.S.C. § 1114); *Gordashevsky,* 558 F. Supp. 2d at 536 (trademark infringement and false designation claims analyzed under identical standards) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)).

Here, the first and second factors are easily met. Plaintiff owns the ArcelorMittal Marks, which are valid and legally protected. *See, e.g., E.A. Sween Co. v. Deli Exp. of Tenafly, LLC,* 19 F. Supp. 3d 560, 568 (D.N.J. 2014) ("A certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims.") (citation modified).

The third factor is also satisfied. Defendant's use of the ArcelorMittal Marks as a "source identifier" to solicit payment is conduct within the scope of the Lanham Act – the use of marks in commerce "in connection with the sale, offering for sale" of any "goods or services." *See* 15 U.S.C. § 1125(a)(1); 15 U.S.C. § 1114(1)(a). *Cf. United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 92 (2d Cir. 1997) (finding that the defendant's use of the plaintiff's mark as a "source identifier" seeking to identify itself as part of the same political organization or party as the plaintiff was use in connection with "services" and covered by the Lanham Act). Moreover, Defendant's use of Plaintiff's marks to identify "goods or services" is likely to create confusion. That determination requires courts to consider a variety of factors including those set forth in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983). *See Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005).

Among the *Lapp* factors, the "single most important factor in determining likelihood of confusion is mark similarity." *A & H Sportswear,* 237 F.3d at 216. Here, Defendant is registered with the identical "ArcelorMittal" name. Given the clear similarity of the marks, a consumer who receives solicitations for payments from Defendant would likely be confused and assume that the solicitations are associated with goods or services provided by Plaintiff or that Defendant and Plaintiff share a common "affiliation, connection, or association." 15 U.S.C. § 1125(a)(1)(A); *Fisons Horticulture,* 30 F.3d at 472 (noting that likelihood of confusion "exists when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." (citation modified)); *see, e.g., E.A. Sween Co.*, 19 F. Supp. 3d at 569 (finding that "DELI EXPRESS" and "DELI EXPRESS OF TENAFLY" marks were likely to cause

confusion). Because Plaintiff does not assert that Defendant provides any non-competing goods or services and claims that Defendant's use of its unusual trademark name is to solicit payment for Plaintiff's goods or services, the Court need not look beyond the mark itself to the other *Lapp* factors. *Cf. A & H Sportswear,* 237 F.3d at 214 ("If products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves.").

Finally, even if no customer has yet "diverted" any monies to Defendant, *see* Decl. of Philippe Noury, ¶¶ 4, 7, ECF No. 10-3, Plaintiff has stated a claim for a violation of the Lanham Act. *See* 15 U.S.C. § 1114(1)(a) (providing liability for the unauthorized use of a trademark in connection with the sale or even the *offering* of sale of any goods or services *likely* to cause confusion); 15 U.S.C. § 1125(a)(1)(A) (establishing liability for passing off of goods or services *likely* to cause confusion); *Alpha Pro Tech, Inc. v. VWR Int'l LLC,* 984 F. Supp. 2d 425, 453–54 (E.D. Pa. 2013) (noting that a defendant's use of plaintiff's trademark to "pass off" of its products as the plaintiff's violates the Lanham Act, 15 U.S.C. § 1125(a) even where the defendant's passing off "lures potential customers away from the plaintiff but where the customers recognize the passing off before actually transacting business with the defendant." (citing *Checkpoint,* 269 F.3d at 294–95)). Plaintiff has sufficiently stated a claim that Defendant's use of the ArcelorMittal Marks to identify goods or services is likely to create confusion concerning the origin of the goods or services.

In sum, Plaintiff has stated a cause of action in Counts 1 and 2 for trademark infringement, false designation of origin, and unfair competition under the Lanham Act.

2. *Trademark Dilution (Count 3)*

"The federal cause of action for trademark dilution grants extra protection to strong, well-recognized marks even in the absence of a likelihood of consumer confusion—the classical test for trademark infringement—if the defendant's use diminishes or dilutes the strong identification value associated with the plaintiff's famous mark." *Times Mirror Mags., Inc. v. Las Vegas Sports News, L.L.C.,* 212 F.3d 157, 163 (3d Cir. 2000). "Dilution by blurring" is the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B); *see Times Mirror,* 212 F.3d at 168 ("Dilution by blurring takes place when the defendant's use of its mark causes the identifying features of the plaintiff's famous mark to become vague and less distinctive."). "'Dilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C); *Vista India v. Raaga, LLC*, 501 F. Supp. 2d 605, 622 (D.N.J. 2007) ("Dilution by tarnishing occurs when a junior mark's similarity to a famous mark causes

consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product.").

To establish a *prima facie* claim for relief under the federal dilution act,[3] a plaintiff must establish the following: (1) ownership of a mark that qualifies as a "famous" mark in light of the factors listed in 15 U.S.C. § 1125(c)(2)(A); (2) Defendant is making commercial use in interstate commerce of the mark or trade name; (3) Defendant's use began after the mark became famous; and (4) Defendant's use causes dilution by lessening the capacity of the mark to identify and distinguish goods or services. *Times Mirror,* 212 F.3d at 163.

Under the first prong, a "mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "This is a 'rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country.'" *Muhammad v. Nike, Inc.,* No. 20-17892, 2021 WL 4133965, at *2 (D.N.J. Sept. 10, 2021) (citing *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007)). "[W]hether the mark is well-known throughout the country" is measured by the "general consuming public" rather than the "relevant consuming public." *Vista India*, 501 F. Supp. 2d at 623–24 (finding that mark was not well-known throughout the country rather than just among the relevant consuming public of Indian and South Asian music buyers). To determine whether a mark satisfies this "requisite degree of recognition, the court may consider all relevant factors, including the following:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(A)(i)-(iv).

In this case, Plaintiff is a multinational company and purports to be the second largest producer of steel in the world. However, apart from alleging that its marks are

---

[3] 15 U.S.C.A. § 1125(c)(1) provides: "Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

federally registered, Plaintiff has not addressed any of these factors that go toward showing that its marks are "widely recognized by the general consuming public" rather than just in its relevant industry, here steel. *See, e.g., Harp v. Rahme,* 984 F. Supp. 2d 398, 422 (E.D. Pa. 2013), *aff'd* (Aug. 13, 2014) (finding that the plaintiff failed to establish that her marks were "famous" where she alleged being a "nationally known wholesaler and retailer" but presented no evidence to demonstrate national distribution or recognition, "including no evidence of the extent or geographic reach of advertising or sales, or actual consumer recognition of Plaintiffs mark."). Because Plaintiff has not satisfied the first prong, the Court need not consider the remaining factors to find that Plaintiff's claim for trademark dilution is legally insufficient. Accordingly, Plaintiff's motion for default judgment against Defendant on Count 3 is **denied**.

*3. State Law Claims*

In Count 4, Plaintiff alleges violations of the N.J.S.A 56:4–1.[4] The analysis for unfair competition under New Jersey statutory law is identical to Section 43(a) of the Lanham Act. *See J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law."); *Harlem Wizards Ent. Basketball, Inc. v. NBA Properties, Inc.,* 952 F. Supp. 1084, 1091 (D.N.J.1997) ("N.J.S.A. 56:4–1 is the statutory equivalent of Section 43(a)(1) of the Lanham Act and the analysis for trademark infringement under New Jersey common law is the same as under Section 43(a)(1)"). Because Plaintiff has stated a viable cause of action under the Lanham Act, *see* discussion *supra*, Plaintiff's allegations set forth a claim for unfair competition in violation of N.J.S.A. § 56:4-1.

B. Whether The Entry Of Default Judgment Would Be Proper

As to Counts 1, 2, and 4, Defendants have no meritorious defense based on the limited record before the Court. *See, e.g., Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.,* No. 11–624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (no meritorious defense where court could not determine existence of meritorious defense since defendant did not respond). Moreover, Plaintiff has clearly been prejudiced by Defendants' failure to answer as it remains unable to move forward with the case, and has been delayed in receiving the requested relief, including an injunction to prevent further infringement. *See, e.g., E.A. Sween Co.*, 19 F. Supp. 3d at 575 (holding plaintiff would suffer prejudice from denial of default judgment where defendant failed to appear or

[4] N.J.S.A. § 56:4-1 states: "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."

defend itself in nearly seven months since proper service). Finally, where, as here, a defendant has failed to respond, there is a presumption of culpability. *See Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4.

C. Remedies

*1. Permanent Injunction*

The Lanham Act vests courts with the power to provide permanent injunctive relief. *See* 15 U.S.C. § 1116(a); *Piquante Brands Intern., Ltd. v. Chloe Foods Corp.*, 2009 WL 1687484, at *6 (D.N.J. June 16, 2009) ("Under the Lanham Act, an injunction is a 'usual and standard remedy.'" (citing 5 J. Thomas McCarthy, *Trademarks & Unfair Competition* § 30:1 (4th ed. 2006)). A permanent injunction requires Plaintiff to demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc., v. MercExchange LLC,* 547 U.S. 388, 391 (2006).

To start, "once a likelihood of confusion has been established, 'the inescapable conclusion is that there was also irreparable injury,' which satisfies the first factor, and the public's right not to be confused has been violated, which satisfies the fourth factor." *Nike, Inc. v. Glob. Heartbreak LLC,* No. 24-476, 2024 WL 4712766, at *7 (D.N.J. Nov. 7, 2024) (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805-07 (3d Cir. 1998)); *see* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction."); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (noting that "loss of control of reputation, loss of trade, and loss of good will" are grounds for irreparable injury) (citing *Pappan Enters*., 143 F.3d at 805).

As to the second factor, harm to its trademarks cannot be remedied solely through monetary relief. *See Nike*, 2024 WL 4712766, at *7 (finding the second element established "because while a remedy at law would provide some relief, it would not adequately compensate Nike for the reputational and goodwill injury associated with the distribution of infringing goods, nor would it prevent future trademark infringement.").

Lastly, the balance of equities weighs in favor of injunctive relief because the conduct to be enjoined clearly violates the Lanham Act and serves no legitimate purpose. *See, e.g., E.A. Sween Co., Inc., LLC*, 19 F. Supp. 3d at 576–78 (granting permanent injunction enjoining defendants from infringing on plaintiffs' trademarks when

defendant's only hardship was to stop unlawful conduct and public interest was served to have "a truthful and accurate marketplace"); *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 689–90 (D.N.J. 2015) (granting permanent injunction on default judgment of trademark infringement claims when defendant's use of plaintiff's marks created consumer confusion and it furthered public interest to protect registered trademarks). Accordingly, Plaintiff is entitled to injunctive relief.

2. *Statutory Damages*

The Lanham Act permits a plaintiff to elect to recover an award of statutory damages instead of actual damages and profits. *See* 15 U.S.C. § 1117(c). "Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringer's control and is not disclosed." *JUUL Labs, Inc. v. Zoey Trading LLC*, No. 21-19299, 2022 WL 970412, at *6 (D.N.J. Mar. 31, 2022). A plaintiff challenging the use of a counterfeit mark may elect to recover statutory damages between $1,000 and $200,000 per mark, but if the use of a counterfeit mark was "willful," then the court may award up to $2,000,000 per mark per type of goods sold, offered for sale, or distributed, as the court considers just. 15 U.S.C. § 1117(c)(2); *Matos*, 133 F. Supp. 3d at 687. Courts have "wide discretion in determining an appropriate award within this range." *Id.* While statutory damages serve as a substitute for actual damages and should bear some discernible relation to the actual damages suffered, courts have also used their discretion to deter and punish defendants. *Id.*

Here, Plaintiff requests a statutory award of the minimum of $1,000 for the use of the counterfeit mark in Defendant's registration. Although Plaintiff does not claim that any of its customers made any payments to Defendant, the Court finds that in this matter, the minimum statutory damage award is appropriate as punishment and deterrence.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for entry of default judgment is **granted** as to Counts 1, 2, and 4. Default judgment is **denied** as to Count 3. Judgment shall be entered against Defendant in the amount of $1,000. Defendant is permanently enjoined from any use of the ArcelorMittal Marks. An appropriate order and judgment follow.

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 10, 2026**